IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEROME WALKER,

                                       OPINION AND ORDER

            Plaintiff,

                                           18-cv-442-bbc

    v.

SGT. SAYLOR, LT. SCULLION, MARK KARTMAN,
J. WATERMAN, GARY BOUGHTON, LT. ATWOOD,
LORI ALSUM and OFFICER TAFOYA,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Jerome Walker is incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. He filed this proposed civil action under 42 U.S.C. § 1983, contending that prison officials (1) violated his right to privacy in his medical information in violation of the Health Insurance Portability and Accountability Act (HIPAA) and state negligence law, and (2) retaliated against him for complaining about it, in violation of the First Amendment. Soon after filing his initial complaint, plaintiff filed an amended complaint, which is the operative pleading in this case. Because plaintiff is incarcerated, his amended complaint must be screened under 28 U.S.C. § 1915A.

      For the reasons explained below, I am dismissing plaintiff's complaint because it fails to state any federal claim upon which relief may be granted.

1

Plaintiff alleges the following facts in his amended complaint.

ALLEGATIONS OF FACT

At all times relevant to his complaint, plaintiff has been incarcerated in administrative confinement at the Wisconsin Secure Program Facility, where defendants are all employed. Defendant Gary Boughton is the warden, defendant J. Waterman is the health services manager, defendant Mark Kartman is the security director, defendant Lori Alsum is the health services nursing coordinator and defendants Sergeant Saylor, Officer Tafoya, Lieutenant Atwood and Lieutenant Scullion are correctional officers.

Plaintiff has diabetes for which he takes insulin. The amount of insulin he receives is determined by "readings" he takes and reports to correctional staff. (I understand plaintiff to be referring to blood sugar level readings.) On September 4, 2017, plaintiff wrote to defendant Waterman to complain about correctional staff having access to his private medical information and distributing his insulin, but Waterman did not respond. Plaintiff wrote to Waterman again on September 6, 2017, and Nurse Anderson responded on September 7 that the restrictive housing handbook states that correctional officers pass all medications, which includes insulin. Later on September, 7, 2017, plaintiff wrote Waterman, stating that he would not give his blood sugar levels to correctional staff or take the insulin they gave him. Waterman responded that the insulin would be on the medication cart as usual and that his health would be affected by his decisions. She also stated that plaintiff was taking only portions of his medication and that he would need to tell the officers his blood sugar level and the amount of insulin he needed.

2

On September 7, 2017, defendant Tafoya noted in plaintiff's behavior log at 10:39 a.m. that plaintiff refused to provide his blood sugar level or the amount of insulin he had taken. At 5:16 p.m. that day, defendant Saylor issued plaintiff a conduct report for disobeying orders after plaintiff refused to provide defendants Saylor, Atwood and Scullion information about his blood sugar levels. Atwood told plaintiff that if he did not agree to 15 days' room confinement, he would receive a harsher punishment, so plaintiff agreed to the 15 days. Scullion placed plaintiff on a paper and toothpaste restriction, stating that plaintiff had covered his windows with an unknown substance believed to be toothpaste. In a memorandum dated September 8, 2017, defendant Kartman informed plaintiff that all items that could be used to cover his cell windows would be removed for 10 days.

On September 19, 2017, plaintiff asked Waterman if he could log his readings himself and turn in the log to the health services unit once a month. Although Waterman agreed to let plaintiff log his own readings, she told plaintiff that he still had to tell the correctional officers his blood sugar levels (presumably so that he could receive the correct amount of insulin).

Plaintiff filed an inmate complaint, stating that he should not have to report his insulin levels to correctional officers. On September 22, 2017, defendant Boughton told plaintiff that he had reviewed plaintiff's complaint but was denying it because correctional officers had the right to administer prescription medications. On September 29, 2017, plaintiff wrote defendant Alsum about his privacy concerns and she told plaintiff to file an inmate complaint. Plaintiff filed an inmate complaint about having to provide correctional

officers his medical information and another complaint about correctional officers issuing him a conduct report in retaliation for complaining about them. (It is not clear from the complaint how many inmate complaints plaintiff filed.)

On October 2, 2017, plaintiff wrote defendant Waterman to tell her that Nurse Feldman had refused to give him a log sheet to record his blood sugar levels and that he thought Feldman was retaliating against him for complaining about reporting his blood sugar levels to correctional staff. The next day, Waterman responded that he would be provided the log.

OPINION

Although plaintiff alleges that defendants violated his right to privacy and retaliated against him for complaining about it, he is essentially challenging the prison policy or practice that allows correctional officers to record plaintiff's blood sugar levels and distribute the insulin he needs to control his diabetes while he is housed in segregation. However, because plaintiff has failed to raise a valid challenge to the policy, his allegations fail to state a federal claim upon which relief may be granted.

Plaintiff cannot proceed on a claim based on violations of the Health Insurance Portability and Accountability Act because that statute does not create a private right of action or an enforceable right for purposes of a private civil lawsuit. Carpenter v. Phillips, 419 Fed. Appx. 658, 659 (7th Cir. 2011) (citing Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010); Wilkerson v. Shinseki, 606

4

F.3d 1256, 1267 n. 4 (10th Cir. 2010); Acara v. Banks, 470 F.3d 569, 570-72 (5th Cir. 2006)); Kobishop v. Marinette County Sheriff's Department, 2013 WL 3833990, at *2 (W.D. Wis. July 24, 2013). Although the Health Insurance Portability and Accountability Act provides both civil and criminal penalties for improper disclosures of protected information, it limits enforcement of the statute to the Secretary of Health and Human Services. Franklin v. Wall, 2013 WL 1399611, at *2 (W.D. Wis. Apr. 5, 2013) (citing 42 U.S.C. §§ 1320d-5(a)(l), 1320d-6).

Some federal courts have held that prisoners have a limited right of privacy in their medical information under the due process clause of the Fourteenth Amendment. E.g., Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999). For example, the gratuitous or unjustified disclosure of an inmate's sensitive or embarrassing medical information to non-medical staff or other prisoners may be unconstitutional. Doe, 257 F.3d at 317 (right "especially strong" with respect to HIV status); Powell, 175 F.3d at 112 (prisoner has right of privacy in transsexualism). Although the Court of Appeals for the Seventh Circuit has not definitively addressed the issue, Massey v. Helman, 196 F.3d 727, 742 (7th Cir. 1999) ("Whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question."), it has recognized that disseminating "humiliating but penologically irrelevant details" of a prisoner's medical history "might conceivably constitute the infliction of cruel and unusual punishment." Anderson v. Romero, 72 F.3d 518, 523 (7th Cir. 1995) (noting in dicta that

5

certain disclosures of medical information would be actionable under Eighth Amendment rather than Fourteenth Amendment).

However, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." Doe, 257 F.3d at 317. For example, the right does not extend to the routine reporting of medical findings in the ordinary course of prison medical care. Id. ("We do not suggest that Doe has a right to conceal this diagnosed medical condition from everyone in the corrections system."); Ueland v. United States, 291 F.3d 993, 999 (7th Cir. 2002) ("[T]he Bureau of Prisons is entitled to up-to-date medical information about persons in its custody—indeed is constitutionally obliged to obtain that information, in order to prevent the infliction of cruel and unusual punishment."); Franklin v. District of Columbia, 163 F.3d 625, 638-639 n. 14 (D.C. Cir. 1999) (prisoners "do not have a privacy right, derived from the Constitution," that protects communication of medical information during course of treatment).

In this case, plaintiff's allegations that correctional officers record his blood sugar levels and insulin use come nowhere close to demonstrating a constitutional violation. Plaintiff does not allege that the test results he had to provide to correctional officers contained medical information of a sensitive or embarrassing nature or that the correctional officers disseminated it to inmates or other non-medical staff for an improper purpose. Rather, he alleges that the information was forwarded to the health services unit, which was providing him medical care for his diabetes while he was incarcerated.

6

Plaintiff also cannot proceed with a retaliation claim. Although a prisoner has the constitutional right to complain about prison conditions and not suffer adverse treatment because he made a complaint, plaintiff's allegations do not suggest that defendants wrote him up and disciplined him because he filed a complaint or grievance. Rather, defendants made a comment in plaintiff's behavior log and issued him a conduct report for refusing to comply with a prison policy or practice that requires him to provide his blood glucose levels and insulin usage to correctional officers. Plaintiff admits that he refused to provide the information and does not allege that similar behavior by other inmates was not punished.

Finally, even though plaintiff suggests that it is a violation of state law for correctional staff to distribute medications to inmates, I am not aware of any such law. In fact, it is common practice for correctional officers to distribute medications to inmates. In addition, apart from alleging that this system violates his privacy rights under HIPAA, plaintiff does not allege that it harmed him in any way. In any event, this court lacks subject matter jurisdiction over any state law claims that plaintiff may seek to bring. Federal courts generally have authority to hear two types of cases: (1) cases that arise under federal law, 28 U.S.C. § 1331; and (2) cases in which the parties in suit are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332. In cases in which a federal court has jurisdiction under § 1331, it may exercise supplemental jurisdiction over other claims that form part of the same case and controversy. 28 U.S.C. § 1367. Because plaintiff has failed to state a claim under federal law, this court may not exercise supplemental jurisdiction over any state law claims that plaintiff may have. Further, because

7

plaintiff alleges that he and all of the defendants are citizens of Wisconsin, there is no diversity jurisdiction under 28 U.S.C. § 1332.

ORDER

IT IS ORDERED that this case is DISMISSED for plaintiff Jerome Walker's failure to state a claim upon which relief may be granted. A strike shall be recorded in accordance with 28 U.S.C. 1915(g). The clerk of court is directed to enter judgment in favor of defendants Sgt. Saylor, Lt. Scullion, Mark Kartmnan, J. Waterman, Gary Boughton, Lt. Atwood, Lori Alsum and Officer Tafoya and close this case.

Entered this 21st day of August, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge